IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2014

## FELTON McNEAL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-00295     Chris Craft, Judge

_____

**No. W2013-02014-CCA-R3-PC  - Filed October 10, 2014**

_____

The petitioner, Felton McNeal, appeals the denial of his petition for post-conviction relief, arguing that his guilty pleas were unknowingly and involuntarily entered without the effective assistance of counsel.  After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Michael R. Working, Memphis, Tennessee, for the appellant, Felton McNeal.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Katie Ratton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In January 2010, the petitioner was indicted for various offenses arising out of a large-scale drug conspiracy.  The petitioner pled guilty to three counts of selling cocaine in an amount greater than .5 grams, Class B felonies; four counts of conspiracy to sell cocaine in an amount greater than .5 grams, Class C felonies; conspiracy to commit aggravated burglary, a Class D felony; two counts of conspiracy to sell Hydrocodone, Class D felonies; and conspiracy to sell cocaine in an amount less than .5 grams, a Class D felony.  The trial court sentenced the petitioner as a multiple offender to concurrent sentences for a total of eighteen years.

At the guilty plea hearing, the State summarized the underlying facts as follows:

The facts of these matters had they gone to trial, first generally, officers were alerted to a large scale drug network, which included as one of its members, [the petitioner].

[The petitioner] was contacted at a telephone number . . . by a confidential source in concert with police officers. They arranged a purchase of cocaine from [the petitioner] in the amount of two ounces. On Friday, June 19, 2009, [the petitioner] showed up at the exchange and sold officers what later tested positive for two ounces, fifty-eight-point-one-two-grams, of cocaine, in exchange for $2,000.00 in marked funds.

Thereafter, [an] officer obtained a court ordered wire tap . . . for [the petitioner]'s telephone. The various cases that follow deal with calls and surveillance which occurred over the next two months on [the petitioner]'s telephone.

On August the 6th of 2009, [the petitioner] communicated with another individual with regard to that other individual going to a house without the consent of the owner and breaking into the house to take various merchandise that was inside the house.

Officers were sent to the location and stopped the burglary before it happened, however, the individual that [the petitioner] was contacting with went to the home to commit the burglary. . . .

On July the 30th of 2009, officers monitored phone calls in which [the petitioner] communicated with James Thomas, in which he conspired with Mr. Thomas to sell him half an ounce of cocaine.

On July 26th of 2009, officers monitored calls between [the petitioner] and an unknown party, using a certain telephone number in which [the petitioner] conspired with the individual and met the individual in order to sell him a very small amount of cocaine, approximately, half a gram of cocaine.

On July 29th of 2009, officers monitored calls between [the petitioner] and an unknown individual in which [the petitioner] conspired to sell forty Hydrocodone pills to that individual.

On July the 30th of 2009, officers monitored calls between [the petitioner] and an individual who identified himself as Robert, in which [the petitioner] conspired with that individual to provide one-point-seven grams of cocaine, half of a what [the petitioner] referred to as an eight ball.

On July the 30th of 2009, [the petitioner] conspired with Keith Rankin, Sr., to provide him three-point-five grams of cocaine. [The petitioner] and Mr. Rankin[] traveled to meet each other for the cocaine exchange.

On August the 1st of 2009[,] [the petitioner] conspired with an individual by the name of Marcus to provide him half of an eight ball of cocaine, it's approximately one-point-seven grams. The individuals, again, traveled to meet each other.

On August the 3rd of 2009[,] [the petitioner] conspired with Michael Waters with regard to purchasing Lor[tab] from [the petitioner].

Most of the facts of all of the cases are the same, if the [S]tate went to trial[,] we would present telephone calls which [the petitioner] spoke with these various individuals. Most of these incidents here were also surveilled by officers who followed [the petitioner] to and from various locations as he was delivering the cocaine, or meeting the various parties.

In each of the deals it's more than just talk on the telephone, there's some overt act that either [the petitioner] or his co-conspirator took toward completion of those various conspiracies.

. . . .

. . . [The petitioner] gave a statement of admission with regard to his activities at the time he was arrested.

. . . [The petitioner] has provided assistance and will continue, or at least, that is expected, to continue to provide assistance in various matters.

At the plea hearing, the petitioner told the court that counsel explained everything in the waiver of jury trial and request for acceptance of guilty plea petitions to him, and he understood the contents. He said that he understood the charges against him and to what he was pleading guilty. The petitioner acknowledged that he understood his right to a trial and what that would entail. The petitioner acknowledged that he understood the possible

sentences he faced for the various offenses to which he was pleading. The petitioner stated that he understood that he was giving up his right to a trial by pleading guilty and said that he wanted to plead guilty. He agreed that no one was forcing him to plead guilty or promising him anything in exchange for doing so.

The petitioner stated that counsel had received the discovery and discussed his case "completely" with him. The petitioner told the court that he was satisfied with counsel's representation. The court read the guilty plea petition aloud in segments, with the petitioner acknowledging his understanding and consent to the terms after every segment and agreeing that he had signed it. The petitioner acknowledged his understanding that the court would determine his sentence. Afterward, the court again received affirmative answers from the petitioner when asked if the petitioner agreed to the plea and had no questions. The petitioner averred to the court that he wanted to plead guilty. The trial court ruled that the petitioner understood his plea and the process, and he was entering his plea freely and voluntarily without threat or coercion.

The petitioner filed a timely petition for post-conviction relief and, following the appointment of counsel, an amended petition was filed. In his petitions, the petitioner argued, among other things, that he received the ineffective assistance of counsel and his guilty pleas were unknowingly and involuntary entered. The post-conviction court conducted an evidentiary hearing at which counsel testified that he had been a defense attorney for thirteen years. Counsel said that the petitioner's case was part of a "pretty huge drug conspiracy case" involving 100 indictments, of which the petitioner was personally mentioned "in about a dozen." Counsel recalled that the petitioner's case was somewhat unusual in that the petitioner had already "given a full confession to OCU" before his representation began and there were "hours and hours of wire tap on [the petitioner]'s phone[.]" Counsel said that, although he did not play the tapes of the wire tap for the petitioner, counsel "went over them [him]self and . . . talked to [the petitioner] about the subject matter on there." Counsel stated that because the petitioner was eager to cooperate with the State in order to get out of jail and "help himself out," counsel and the prosecutor met with the petitioner "multiple times" and discussed the evidence the State had against him. Counsel also discussed the difference between consecutive and concurrent sentencing with the petitioner.

Counsel testified that, according to the terms of the plea agreement, the petitioner was to plead guilty but be sentenced at a later time. Depending on the petitioner's level of cooperation with the State, the State would make a recommendation to the trial court as to the sentence the petitioner should receive or the trial court could determine the petitioner's sentence. The State also agreed to reduce the petitioner's bond from almost $700,000 to $20,000. In exchange, the petitioner was to keep in touch with his OCU officer and counsel,

as well as have periodic status court dates. However, the petitioner did not abide by the conditions of his bond, including missing court appearances, not staying in contact with the agent or counsel, and then disappearing for approximately six months. A warrant was eventually issued for his arrest.

Counsel testified, with regard to sentencing, that the State filed notices to seek consecutive sentencing and of enhancement factors. Counsel said that he did not file any responses because "if we went forward with a contested sentencing hearing, . . . [the petitioner] . . . would probably have gotten a lot more time from the Judge than anything I would have worked out." He did not file any mitigating factors because his investigation did not reveal any.

Counsel testified that the focus of his representation was on negotiating the best deal he could for the petitioner, not preparing for a contested matter as the petitioner "was adamantly, adamantly against going to trial." He said that he and the petitioner "went over the indictments, we went over the discovery. We even had the prosecutor that had prosecuted him and had reviewed all the discovery come in and meet with him and go over the discovery with him as well." Counsel estimated that he met with the petitioner between five and fifteen times while the petitioner was in custody, but the petitioner continually failed to keep his appointments after he was released from jail.

On cross-examination, counsel stated that he included an attachment to the guilty plea as an extra step of ensuring that the petitioner understood the implications of his plea. Counsel said that the petitioner never indicated that he wanted a trial and was candid with counsel that he knew he potentially faced a long term. The petitioner faced the possibility of sixty years, but counsel and the State were able to agree on a sentence of eighteen years.

The prosecutor assigned to the petitioner's case testified that he met with the petitioner four or five times over the course of the matter. He asserted that, without the plea negotiated by counsel, the petitioner would have likely been sentenced to thirty-two or thirty-four years instead of eighteen. The prosecutor stated that, although counsel did not present a written notice of mitigating factors, counsel presented him with mitigating considerations which were taken into account in their negotiations.

On cross-examination, the prosecutor stated that he agreed with counsel's assessment that the petitioner was intelligent and understood the situation he was in. He said that the petitioner understood the possible sentence he faced and recalled that, when he asked the petitioner what would happen if he did not cooperate, the petitioner said, "You're going to bury me." The prosecutor stated, "I don't think there's any question in the world as to whether or not [the petitioner] understood the situation or understood what he was facing.

-5-

I had absolutely no doubt that he understood those things."

The petitioner testified that he did not have the opportunity to go over the evidence against him and only told the trial court that he had at the plea hearing because he "was just following suits of my lawyer." He elaborated that he "was just trying to speed the process and me go on home." He maintained that he did not have a chance to discuss the evidence with counsel or talk about what was going on in his case. He said that he did not have a chance to listen to any of the surveillance tapes. The petitioner admitted that he had given a confession to officers, which he had a chance to review.

The petitioner acknowledged that he had previously entered guilty pleas in five other felony drug cases and, because of this, knew the consequences involved with guilty pleas. However, he said that he "didn't know [he] was going to get that much time[.]" The petitioner conceded that counsel met with him several times prior to the guilty plea, as well as a couple of times between the plea and sentencing, before the petitioner fell out of touch.

The petitioner testified that he disagreed with his sentence in that he believed his conspiracy convictions were for the same offenses as the convictions for selling the drugs. He also felt there was a vast disparity in the length of sentence for his various offenses. However, he admitted that he signed fifteen or twenty pieces of paper agreeing to his sentence but said that, after conducting research, he felt his sentence was "uncalled for" and "too much time."

On cross-examination, the petitioner admitted that he met with counsel "many, many times" and spoke with counsel in great detail about his case, and he told counsel that he did not want to go to trial. He acknowledged that he did not uphold his part of the agreement with the State. He admitted that he was "just unhappy that [his sentence was] 18 years." The petitioner said that counsel was "a great lawyer" and did everything he wanted him to do. He agreed that the only reason he was in court was because he felt that his sentence was excessive but that counsel "really didn't have much to do with that" because he pled open to the court.

Following the hearing, the post-conviction court denied relief. The court found that there was no deficiency in counsel's performance or any prejudice to the petitioner due to any alleged deficiency. The court further found that the petitioner's pleas were "freely and voluntarily made, and knowingly and intelligently entered into, with an understanding of the nature and consequences of his plea[s]."

## ANALYSIS

The petitioner argues that his guilty pleas were unknowingly and involuntarily entered without the effective assistance of counsel.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)

(citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Again, the petitioner argues that his guilty pleas were unknowingly and involuntarily entered without the effective assistance of counsel. He asserts that counsel did not review discovery with him, causing him to not "make a properly informed decision" in pleading guilty. He also asserts that counsel failed to prepare for the sentencing hearing, leaving him "with a false choice . . . [to] proceed with an attorney who was unprepared, or . . . accept an extremely harsh sentence for crimes that nearly all lacked any physical proof."

We have reviewed the record and determine that the petitioner's claims are wholly unsupported by the record. Counsel testified to his investigation of the case and review of the evidence, and the post-conviction court determined that the proof at the hearing did not

show any deficiency in counsel's performance. The testimony at the hearing showed that the petitioner consistently expressed an urgent desire to plead guilty, and the petitioner had previously entered guilty pleas and was aware of the consequences that followed. The petitioner himself testified at the evidentiary hearing that counsel was a "great lawyer" and had done all he could to help him and that he was simply unhappy with the sentence he received, which was well within the purview of the court to impose.

Even though the petitioner faced a sentence of up to sixty years, counsel negotiated a sentence of eighteen years with the State that was ultimately accepted and imposed by the trial court. Counsel did not file an official notice of mitigating factors, but he discussed mitigating considerations with the State in their negotiations. The record shows that the petitioner, who was "very intelligent" and familiar with criminal proceedings, was represented by competent counsel, who met with him often and discussed the evidence against him, and that he pled guilty because he was admittedly guilty and stood to receive a greater sentence if convicted at trial. The transcript of the guilty plea hearing showed that the trial court went over the petitioner's rights, the ramifications of pleading guilty, the nature of the charges against him, and the range of sentencing. Based on the totality of circumstances, we conclude that the petitioner entered knowing, voluntary, and intelligent pleas and failed to prove that counsel performed deficiently or that any deficiency affected the knowing and voluntary nature of his pleas.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the petitioner has failed to meet his burden of showing that he received ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE